ROBERT E. WOODILL et al., Indiv. and as Parents and Next Friends of Eric Woodill, a Minor, Plaintiffs-Appellants, v. PARKE DAVIS & COMPANY et al., Defendants-Appellees.

First District (5th Division)  No. 76-1654

Opinion filed January 27, 1978.—Rehearing denied April 12, 1978.

John D. Hayes & Associates, Ltd., of Chicago (John J. Lowrey and John D. Hayes, of counsel), for appellants.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith and John D. Cassiday, of counsel), for appellees.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiffs appeal from an order granting the motion of Parke Davis & Company to dismiss the first three counts of a nine-count amended complaint seeking damages for injury allegedly resulting from the use of a drug. Those three counts were directed against defendant only, and the case remains pending in the trial court on six counts against the other named defendants.

It appears from the amended complaint that the prescription drug pitocin, manufactured and sold by Parke Davis & Company (defendant) was given to Ellen Woodill, mother of Eric Woodill (Eric) while she was hospitalized as an obstetrical patient. The drug was administered to her by order of her physician while the fetus was in high station.

In count I, which sounds in strict liability, Eric's parents seek damages for his serious injuries allegedly resulting from the administration of the drug to his mother. In count II, also sounding in strict liability, Eric's parents seek to recover the medical expenses incurred by Eric's treatment and for their "mental anguish and distress by reason of the injuries to their son." In count III, Eric's parents seek damages for Eric's injuries on a breach of implied warranty theory.

Defendant moved to dismiss, asserting generally that no cause of action was stated in either of counts I, II or III. Memoranda were submitted to the court and, after a hearing, defendants' motion was granted. The issue on appeal concerns the propriety of this dismissal order.

OPINION

Regarding the dismissal of count I, the parties have presented two questions in this appeal. The first concerns whether a cause of action exists

in strict liability against a drug manufacturer for failure to give a proper warning. Plaintiffs argue that Illinois recognizes such an action and that they have stated its essential elements in their complaint; whereas, defendant posits that the failure to warn is a negligence theory which cannot be a basis of strict liability.

Both parties correctly agree that negligence is not an element of strict liability. This is evident from the Restatement (Second) of Torts §402A(2)(a) (1965), which provides that the doctrine applies even though "the seller has exercised all possible care in the preparation and sale of his product." See also *Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1975), 62 Ill. 2d 77, 82, 338 N.E.2d 857, 860, where the court stated that the purpose of strict liability "is best accomplished by eliminating negligence as an element * * *."

■■ Although failure to warn has its roots in negligence, we believe it is now well recognized that a product may be defective or unreasonably dangerous under strict liability when it is not accompanied by an adequate warning of the danger attending its use. In *Lawson v. G. D. Searle & Co.* (1976), 64 Ill. 2d 543, 356 N.E.2d 779, which involved the use of the drug enovid, the court in approving an instruction as to the applicable law, stated as follows:

> "The court's instructions * * * told the jury that Enovid could be considered unreasonably dangerous if 'it is not safe for such a use that is to be expected to be made of it and no warning is given.' This instruction parallels certain comments to section 402A of Restatement (Second) of Torts (1965). Comment *h* to that section states that a 'product is not in a defective condition when it is safe for normal handling and consumption,' but *where the seller 'has reason to anticipate that danger may result from a particular use,* as where a drug is sold which is safe only in limited doses, he may be required to give adequate warning of the danger * * *, and a product sold without such warning is in a defective condition.' " (Emphasis added.) (64 Ill. 2d 543, 550, 356 N.E.2d 779, 782.)

In *Williams v. Brown Manufacturing Co.* (1968), 93 Ill. App. 2d 334, 360, 236 N.E.2d 125, 139, *rev'd on other grounds* (1970), 45 Ill. 2d 418, 261 N.E.2d 305, it was stated:

> "In the absence of adequate warning, liability may arise from use of an instrumentality not otherwise defective, since failure to warn may itself be the defect which causes injury."

In *Frisch v. International Harvester Co.* (1975), 33 Ill. App. 3d 507, 516, 338 N.E.2d 90, 97, it was stated that:

> "[P]roducts otherwise not defective unaccompanied by proper warnings are covered under the theory of strict liability."

In *Singer v. Sterling Drug, Inc.* (7th Cir. 1972), 461 F.2d 288, it was held

that defendants who manufacture and market prescription drugs without adequate warnings are subject to the doctrine of strict liability. See also, 2 Frumer & Friedman, Products Liability §16A[4][e] (1976); Prosser, *The Fall of the Citadel (Strict Liability to the Consumer)*, 50 Minn. L. Rev. 791, 808 (1966).

This brings us to the second question for our resolution; namely, whether in strict liability premised on the failure to warn it is necessary to allege or prove actual or constructive knowledge of the danger. In other words, is knowledge an essential element of such an action? Plaintiffs maintain that a failure to warn of danger may itself be the defect required in a strict liability action, and they take the position that the question of whether defendant knew or should have known of the danger is immaterial and not an element of their action based on the failure to warn of that danger. As support, they cite only *Lawson v. G. D. Searle & Co.* (1976), 64 Ill. 2d 543, 356 N.E.2d 779.

While *Lawson* does hold that the failure to warn may be a defect under strict liability, we view it as giving little support to plaintiffs' position that knowledge is not an element. First, because the question of whether it was required to be alleged and proved was not raised in *Lawson*, either in the trial court or on appeal. Secondly, because we have not been able to find, and plaintiffs have not pointed out any statement of the court in *Lawson* to the effect that actual or constructive knowledge of the danger was not required. Moreover, the allegations of the complaint in *Lawson* were not set forth in either the appellate (29 Ill. App. 3d 670, 331 N.E.2d 75) or the supreme court opinions, so that we are unable to determine whether knowledge was in fact alleged in the complaint. We note, however, that it was established through letters sent by defendant to physicians throughout the country informing them of potentially harmful side effects of the drug. Further, it was indicated in *Lawson* that knowledge was required when, in a reference to section 402A, the court stated:

> "Comment *h* to that section states * * * where the seller 'has reason to anticipate that danger may result from a particular use, as where a drug is sold which is safe only in limited doses, he may be required to give adequate warning of the danger * * *.' " (64 Ill. 2d 543, 550, 356 N.E.2d 779, 782.)

It should also be noted that comment *j* to section 402A states:

> "In order to prevent the product from becoming unreasonably dangerous, the seller may be required to give directions or warning, * * * [w]here * * * the product contains an ingredient * * * whose danger is not generally known, or if known is one which the customer would reasonably not expect to find in the product, the seller is required to give warning against it, *if he has*

*knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge, of the presence of the ingredient and the danger.*" (Emphasis added.) (Restatement (Second) of Torts §402A, Explanatory Notes, comment *j*, at 353 (1965).)

In addition, Dean Prosser, in his treatise on the law of torts, stated:

"The argument that industries producing potentially dangerous products should make good the harm, distribute it by liability insurance, and add the cost to the price of the product, encounters reason for pause, when we consider that two of the greatest medical boons to the human race, penicillin and cortisone, both have their dangerous side effects, and that drug companies might well have been deterred from producing and selling them.

Thus far the courts have tended to hold the manufacturer to a high standard of care in preparing and testing drugs of unknown potentiality and in giving warning; but in the absence that this standard has not been met, they have refused to hold the maker liable for the *unforseeable harm.*" (Emphasis added.) (Prosser, Torts §99, at 661 (4th ed. 1971).)

■■ We conclude, therefore, that a manufacturer or seller has a duty to warn under strict liability only when it knows or should have known of the danger. The alternative, which plaintiffs urge, would impose a duty to warn of unknown dangers. It appears incongruous to require a defendant to warn of danger not known or which could not be anticipated.

For other jurisdictions supporting our conclusion that knowledge is a necessary element, see *Nissen Trampoline Co. v. Terre Haute First National Bank* (Ind. App. 1975), 332 N.E.2d 820, *rev'd on other grounds* (Ind. 1976), 358 N.E.2d 974; *Phillips v. Kimwood Machine Co.* (1974), 269 Ore. 485, 525 P.2d 1033; *Patch v. Stanley Works* (2d Cir. 1971), 448 F.2d 483; *Basko v. Sterling Drug, Inc.* (2d Cir. 1969), 416 F.2d 417; *Cochran v. Brooke* (1966), 243 Ore. 89, 409 P.2d 904; *Oakes v. E. I. DuPont de Nemours & Co.* (1969), 272 Cal. App. 2d 645, 77 Cal. Rptr. 709; *Toole v. Richardson-Merrell, Inc.* (1967), 251 Cal. App. 2d 689, 60 Cal. Rptr. 398.

In *Oakes v. E. I. DuPont de Nemours & Co.*, a California court, in considering the rationale for strict liability in the light of a contention similar to plaintiffs' here, that a manufacturer has a duty to warn of unknown dangers, stated:

"The rationale of the strict liability rule is that the injured person is helpless to protect himself from the *actually defective product* [emphasis in original]. It is only reasonable therefore that as between the injured user and the one who places the product on the market the latter should bear the loss. The same rationale would apply to the marketing of a product which contains an

ingredient which the manufacturer knows or should know 'by the application of reasonable, developed human skill and foresight' is dangerous. But, in the view of this court, that is where the reason for the rule ceases and the rule of 'strict' liability itself should stop. *To exact an obligation to warn the user of unknown and unknowable allergies, sensitivities and idiosyncrasies would be for the courts to recast the manufacturer in the role of an insurer beyond any reasonable application of the rationale expressed above.* [Citations.]" (Emphasis added.) 272 Cal. App. 2d 645, 650-51, 77 Cal. Rptr. 709, 713.

A complaint, to sufficiently state a cause of action to withstand a motion to dismiss must minimally allege facts sufficient to set forth the essential elements of the cause of action. Failure on the part of the plaintiff to do so cannot be remedied by a liberal construction of the pleadings. *Fanning v. LeMay* (1967), 38 Ill. 2d 209, 230 N.E.2d 182; *Van Skike v. Zussman* (1974), 22 Ill. App. 3d 1039, 318 N.E.2d 244; *Psyhogios v. Village of Skokie* (1972), 4 Ill. App. 3d 186, 280 N.E.2d 552.

In *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182, the essential elements of a strict liability action were set forth as follows: (1) That there was the sale of a product; (2) that the condition of the product rendered it unreasonably dangerous; (3) that this condition existed when the product left the control of defendant; and (4) that it was a proximate cause of injury. (See also Restatement (Second) of Torts §402A (1965).) Here, plaintiffs have alleged the sale of a product and that the condition of the product was a proximate cause of injury. They have also alleged that the product was not reasonably safe in that defendant failed to give a proper warning "that the use of 'pitocin' while a fetus is in high station is a cause of brain damage in infants." They have not alleged, however, the essential element of actual or constructive knowledge when the unreasonably dangerous condition or, as asserted by plaintiffs, the not reasonably safe condition, is based upon a failure to warn. In the absence of such an allegation, a cause of action was not stated. Moreover, we note that there is also no allegation in count I that the product was in an unreasonably dangerous condition when it left the control of defendant. We conclude that the trial court properly dismissed count I.

In count II, Eric's parents seek damages for emotional distress and mental anguish. In asserting an action sounding in strict liability, they reallege the allegations of count I. They urge that the rationale underlying strict liability should be extended to include a recovery for mental anguish and distress. However, since count II contains allegations identical to those in count I, which we have found not to state a cause of action in strict liability, we hold that count II also fails to state a cause of action for the same reasons.

Moreover, we do not believe that strict liability should be extended to include recovery for emotional distress and mental anguish to the parents of a minor who had suffered injury. First, because section 402A of the Restatement expressly limits recovery to physical harm. That section is entitled "Special Liability of Seller of Product for *Physical Harm* to User or Consumer" (emphasis added), and it provides that "[o]ne who sells any product in a defective condition unreasonably dangerous to user or consumer or to his property is subject to liability for *physical harm* thereby caused to the ultimate user or consumer * * *" (emphasis added). Given the limitation underlined above in section 402A, we conclude that the Restatement did not intend a strict liability action for mental anguish or emotional distress. Furthermore, at present, Illinois recognizes no such action. Case law here allows a cause of action only for severe emotional distress caused by intentional conduct. *Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 360 N.E.2d 765; *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 174 N.E.2d 157. See also Sabin, *Intentional Infliction of Mental Distress—Seventeen Years Later,* 66 Ill. Bar J. 248 (1978).

Count III is predicated on alleged breach of implied warranties of merchantability and fitness under sections 2—314 and 2—315 of the Uniform Commercial Code (Code). Ill. Rev. Stat. 1975, ch. 26, pars. 2—314, 2—315.

Initially, it should be noted that defendant does not raise the defenses of privity or notice. It argues only that breach of implied warranty is inappropriate against the manufacturer of a prescription drug. We disagree, as we believe that *Berry v. G. D. Searle & Co.* (1974), 56 Ill. 2d 548, 309 N.E.2d 550, is controlling of this question. *Berry* involved a birth control pill known as enovid, concerning which the court stated, "This drug was manufactured by defendant G. D. Searle & Co. * * * and prescribed and sold to her [plaintiff Martha Berry] * * * by the co-defendant, * * *." (56 Ill. 2d 548, 550, 309 N.E.2d 550, 552.) While the primary issue was the applicable statute of limitations, the court in *Berry* stated that the provisions of the Commercial Code "clearly demonstrate the legislative intent to create a statutory cause of action for breach of implied warranty to afford consumer protection to those who sustain personal injuries resulting from product deficiencies. This remedy is distinct and in addition to that existing in strict tort liability * * *." (56 Ill. 2d 548, 553-54, 309 N.E.2d 550, 553.) In view thereof, we cannot accept defendants' contention that implied breach of warranty does not apply to the manufacture of a prescriptive drug.

We also reject defendants' further argument that implied warranty of fitness for a particular purpose, as set forth in section 2—315 of the Code, is inappropriate because there was no reliance by plaintiffs on the skill or judgment of defendant. Defendant states in his brief that where a

prescription drug is involved, the buyer "is not relying on the seller's skill or judgment to select or furnish suitable drugs. Instead, * * * it is the physician's skill and judgment upon which the buyer is relying." In substance, he suggests that plaintiffs are precluded as a matter of law under such circumstances. We note, however, that in their complaint, plaintiffs have alleged that they "relied upon the warranty provided and upon the skill and judgment of Parke Davis in purchasing the 'pitocin'." This being a sufficiently well-pleaded allegation, it is admitted by a motion to dismiss in the consideration of whether a cause of action has been stated in the complaint.

As we have pointed out above, defendant's sole contention with respect to count III is that a breach of warranty theory is inappropriate against the manufacturer of a prescription drug. It does not otherwise contest the sufficiency of count III. Thus, having concluded that implied warranty is a viable theory in drug product cases, it is not necessary that we further examine the complaint to determine whether a cause of action has been stated in count III. Nevertheless, to facilitate future proceedings in the trial court, we have made this further examination which discloses that, in addition to the allegations of reliance mentioned above, it alleges defendant manufactured and sold pitocin to the codefendant hospital; that defendant impliedly warranted pitocin to be of merchantable quality and fit for use in certain obstetrical deliveries; that plaintiff relied upon the warranty provided and upon the skill and judgment of defendant in purchasing pitocin; that a treating physician ordered intravenous infusion of the drug into Eric's mother while the fetus was in high station; that defendant breached its warranty of merchantability and fitness by not adequately packaging and labeling the drug, and because it did not conform to defendants' promise and affirmations of fact; and that as a proximate result of the breaches of warranty, Eric was injured. We believe these allegations minimally state a cause of action for breach of warranty under section 2—314 and 2—315 of the Code.

For the reasons stated, that portion of the order dismissing counts I and II of plaintiffs' first amended complaint is affirmed, and that portion of the order dismissing count III is reversed. The cause will be remanded for further proceedings consistent with the content of this opinion.

Reversed and remanded.

LORENZ and WILSON, JJ., concur.