758 F.2d 73
 53 USLW 2488
 Ethel WALTERS, as personal representative of the Estate of
St. Claire Walters, deceased, Appellee,
v.
MINTEC/INTERNATIONAL, et al., Appellants.
Martin MASSICOTT and Catherine Massicott, his wife, Appellees,
v.
MINTEC/INTERNATIONAL, et al., Appellants.
 No. 83-3378.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 4, 1984.
Decided March 20, 1985.
Rehearing and Rehearing In Banc Denied April 18, 1985.
 
 William C. Murphy (argued), Craig S. Mielke, Murphy, Hupp, Foote & Mielke, Aurora, Ill., James L. Hymes, III, Charlotte Amalie, St. Thomas, V.I., for appellants.
 Thomas Alkon (argued), Gordon C. Rhea (argued), John K. Dema, Law Offices of John K. Dema, P.C., Christiansted, St. Croix, V.I., for appellees.
 Before SEITZ, GIBBONS and SLOVITER, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 
 1
 Mintec/International ("Mintec") appeals from a judgment of the district court entered on a jury verdict. Appellate jurisdiction exists pursuant to 28 U.S.C. Sec. 1291 (1982).
 
 I.
 
 2
 This products liability action arises out of the collapse of a loading crane designed by Mintec. In 1977, the Hess Oil Virgin Islands Corporation ("HOVIC") contracted with Mintec to purchase a sulfur loading facility for HOVIC's St. Croix refinery. Mintec was responsible for designing the facility and supervising its construction. The facility was designed to load sulfur, by means of conveyor belts, from the refinery to a dock several hundred feet away. The conveyor belts fed the sulfur to the tower of the crane which had an adjustible boom for loading the sulfur onto ships. The boom was raised or lowered by two cables passing over pulleys at the top of the tower to a hoist drum located on the platform of the crane. To raise the boom, the cables were wound around the hollow hoist drum. The drum turned on a shaft which was secured at either end by two pillow blocks. Each pillow block was held in place by two bolts.
 
 
 3
 On November 20, 1978, St. Claire Walters and Martin Massicott, two HOVIC employees, were assigned to work at the sulfur loading facility. They had just completed loading a barge when the accident in question occurred. As the boom was being lifted into its stowed upright position, the hoist drum broke loose from one of the pillow blocks, causing the boom to collapse and to crash into the tower. Walters was killed in the accident. Massicott escaped immediate physical injury, but asserted that the incident caused him severe mental anguish and emotional distress which, in turn, resulted in physical harm.
 
 
 4
 In August of 1980, a wrongful death action was brought on behalf of Walters' survivors against Mintec and the Shepard Niles Crane & Hoist Corporation ("Shepard Niles").[1] The latter manufactured the hoist mechanism which was incorporated into the sulfur loading facility. At about the same time, Martin Massicott brought a separate action against the same defendants, seeking damages for physical injuries resulting from emotional disturbance and for loss of earning capacity. His wife, Catherine, filed a claim for loss of consortium.
 
 
 5
 The cases brought by Walters' survivors and the Massicotts (collectively "plaintiffs") were consolidated and tried to a jury. Plaintiffs proceeded against Mintec on a theory of strict liability under section 402A of the Restatement (Second) of Torts.[2] Their principal contention was that the crane was defectively designed because it should have been equipped with a four-bolt configuration to hold the hoist to the pillow block base instead of the two-bolt mechanism employed by Mintec. Mintec argued that the crane's failure was due to improper maintenance by HOVIC. It further contended that the accident was caused by the imposition of a foreign object between the gears of the hoist.
 
 
 6
 The jury found in favor of plaintiffs and awarded damages in the following amounts: $10,000 to the estate of Ethel Walters, Walters' mother; $25,000 to James Walters, Walters' father; $250,000 to each of Walters' children, Royston Elmington and Vivien Ricketts; $500,000 to Martin Massicott and $150,000 to his wife, Catherine Massicott. The jury found that Shepard Niles had been negligent and apportioned 10 percent of the liability to it. See Murray v. Fairbanks Morse, 610 F.2d 149 (3d Cir.1979) (applying Virgin Islands comparative negligence statute in strict liability action). Accordingly, the district court, in entering the judgment against Mintec, reduced the amount of each award by 10 percent.[3] Mintec moved for judgment n.o.v. or, in the alternative, for a new trial. The district court denied the motion, and Mintec appealed.
 
 II.
 A. Jury Charge
 
 7
 Mintec first contends that the jury was improperly instructed on the issue of what constitutes a defective condition under section 402A of the Restatement. Specifically, it asserts error with regard to the following language:
 
 
 8
 [P]laintiffs need not prove a specific defect. It is sufficient if you find from the evidence that the product in question malfunctioned, causing the accident, as a result of some mechanical failure or other propensity of the product unknown to the plaintiffs.
 
 
 9
 App. at 948. Mintec concedes that it did not object to this instruction at trial. See Fed.R.Civ.P. 51. Nevertheless, it asserts that the alleged error is of such grave consequence that it may be considered in the first instance on appeal. Notwithstanding a party's failure to raise its objection before the district court, an erroneous jury instruction may require a reversal if the error is plain or fundamental. See Beardshall v. Minuteman Press International, Inc., 664 F.2d 23 (3d Cir.1981).
 
 
 10
 Mintec raises two arguments with respect to the challenged instruction. First, it contends that the instruction is misleading in that it improperly would permit the jury to find against Mintec solely because the product malfunctioned. See Ocean Barge Transport Co. v. Hess Oil Virgin Islands Corp., 726 F.2d 121 (3d Cir.1984). However, alleged errors in jury instructions must be evaluated in light of the instructions as a whole. Ayoub v. Spencer, 550 F.2d 164 (3d Cir.), cert. denied, 432 U.S. 907, 97 S.Ct. 2952, 53 L.Ed.2d 1079 (1977). Here the district court went on to explicitly state that the jury "may not infer a defective condition ... simply because of what occurred on [the date of the accident]." App. at 951. Even assuming, therefore, that the district court's instructions were not perfectly clear, we hold that the challenged language did not amount to fundamental error, and thus the substance of Mintec's objection will not be addressed on its merits.
 
 
 11
 Second, Mintec argues that the district court erred in not instructing the jury that plaintiffs had the burden of eliminating all other reasonable explanations for the product malfunction. See Ocean Barge Transport Co., 726 F.2d 121. Mintec contends that although the issue was not raised before the district court it is reviewable as fundamental error because it had the effect of shifting the burden of proof to Mintec. Assuming, without deciding, that an erroneous instruction as to the burden of proof would have been fundamental error, we find no error in the present case.
 
 
 12
 At the beginning of his instructions on the issue of liability the district court judge stated that in order for the plaintiffs to recover, they must establish by a preponderance of the evidence "that Mintec sold that produce [sic] in question in a defective condition which was unreasonably dangerous to the user or consumer." App. at 947. The court emphasized that plaintiffs had the burden of demonstrating that the product was in a defective condition at the time that it was sold to HOVIC. Moreover, unlike the court in Ocean Barge Transport, the district court in the present case did not suggest that Mintec had the burden of proving that some other factor was responsible for the accident. We do not believe that the instructions, when taken as a whole, leave any doubt as to which party had the burden of proving the existence of a defective condition. Accordingly, we find no error in the challenged instructions.
 
 B. Evidence of Liability
 
 13
 Mintec asserts that there is insufficient evidence in the record to support a finding of liability against it. In essence, it contends that plaintiffs failed to establish a defect in the design of the crane.
 
 
 14
 Viewing the evidence, as we must, in the light most favorable to the party which obtained the verdict below, Herman v. Hess Oil Virgin Islands Corp., 524 F.2d 767 (3d Cir.1975), we believe that there is sufficient evidence in the record to support the jury verdict. Plaintiffs' expert witness presented several theories of design defect. Based on his testimony, the jury could have found that the particular crane designed by Mintec was defective because: (1) it lacked a four-bolt configuration to secure the pillow block base of the hoist; (2) the bolts used were of insufficient strength and lacked necessary self-locking features; (3) the limit switches provided by Mintec were inadequate, contributing to the failure of the pillow block bolts; and (4) Mintec's owners' manual failed to warn users to regularly check and tighten the bolts. Although Mintec posited contrary theories to explain the failure of the crane, we believe that there was sufficient evidence for the jury to find for plaintiffs on the issue of liability. Accordingly, we find no reversible error in the district court's refusal to grant Mintec judgment n.o.v. on the basis of insufficient evidence.
 
 
 15
 C. Recovery for Emotional Disturbance under Section 402A
 
 
 16
 The jury awarded Martin Massicott $500,000 on his claim of physical injury resulting from emotional distress. Mintec seeks a reversal of the award, contending that a plaintiff may not recover, under section 402A of the Restatement (Second) of Torts, for physical injuries which result solely from emotional disturbance. Section 402A in pertinent part provides:
 
 
 17
 One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer ...
 
 
 18
 Restatement (Second) of Torts Sec. 402A(1) (1965) (emphasis supplied).
 
 
 19
 Reduced to its essence Mintec's argument is that an injury resulting from emotional disturbance can never be "physical harm" within the meaning of section 402A. We can find nothing in the Restatement that would support Mintec's restrictive interpretation of "physical harm." To the contrary, our review of the Restatement leads us to conclude that "physical harm" can encompass bodily injury brought about solely by the internal operation of emotional distress. Section 7 of the Restatement defines "physical harm" as "the physical impairment of the human body, or of land or chattels." Restatement (Second) of Torts Sec. 7 (1965). No restrictions are given with respect to the cause of the bodily impairment. Moreover, section 436 of the Restatement is entitled "Physical Harm Resulting From Emotional Disturbance." It is clear from this section that the drafters of the Restatement believed that emotional disturbance could cause physical harm.
 
 
 20
 Mintec argues, however, that section 436 is inapposite because, by its terms, it applies only to negligent conduct. While Mintec is correct that section 436 is inapplicable in the strict liability context, we may nevertheless look to that section for guidance in interpreting the "physical harm" requirement of section 402A. This is because the term "physical harm" has a common meaning as "used throughout the Restatement." Restatement (Second) of Torts Sec. 7 (1965). It follows, then, from reading sections 7, 436 and 402A in concert that use of the term "physical harm" in section 402A does not preclude recovery for physical injuries resulting from emotional disturbance.
 
 
 21
 We are not presented here with the question whether emotional disturbance, absent any physical harm, would be compensable under section 402A. The jury was specifically instructed to distinguish between mere emotional distress and emotional disturbance that results in bodily harm. Thus in awarding damages to Massicott, the jury necessarily found that he had suffered bodily harm resulting from the internal operation of emotional disturbance. We recognize that the line between mere emotional disturbance and physical harm which results from emotional disturbance may be far from clear. In reviewing the sufficiency of the evidence presented at trial we are guided by the comments accompanying section 436A of the Restatement:
 
 
 22
 The fact that [emotional disturbance is] accompanied by transitory, non-recurring phenomena, harmless in themselves, such as dizziness, vomiting, and the like, does not make the actor liable where such phenomena are in themselves inconsequential and do not amount to any substantial bodily harm. On the other hand, long continued nausea or headaches may amount to physical illness, which is bodily harm; and even long continued mental disturbance ... may be classified by the courts as illness, notwithstanding their mental character.
 
 
 23
 Restatement (Second) of Torts Sec. 436A, comment c (1965). Although this section of the Restatement is specifically applicable to cases involving negligence, it is nevertheless instructive in evaluating the seriousness of a plaintiff's emotional injuries in cases in which a comparable theory of liability is asserted.
 
 
 24
 We have carefully reviewed the record and conclude that there is sufficient evidence to permit a jury to find that Massicott suffered bodily harm as a result of his emotional disturbance. Massicott testified that he suffered from severe, incapacitating headaches, that he became weak under stress and that he suffered from insomnia and recurring nightmares. Moreover, his treating psychiatrist testified that Massicott suffered from post-traumatic stress syndrome, a form of mental illness.
 
 
 25
 We must next consider whether, under section 402A, Mintec may be held legally responsible for the bodily harm suffered by Massicott. "The term 'harm' implies no particular causal relation.... [I]t is only when the harm is legally caused by the acts or omissions of another that a person has any legal grounds for objection, or any legal rights in respect to the harm." Restatement (Second) of Torts Sec. 7, comment c (1965) (definition of "injury" and "harm").
 
 
 26
 In negligence cases, legal causation for bodily injuries resulting from emotional disturbance is governed by section 436 of the Restatement. It provides in pertinent part:
 
 
 27
 If the actor's conduct is negligent as creating an unreasonable risk of causing bodily harm to another otherwise than by subjecting him to fright .... the fact that such harm results solely from the internal operation of fright or other emotional disturbance does not protect the actor from liability.
 
 
 28
 Restatement (Second) of Torts Sec. 436(2) (1965). Had this been a negligence case, we believe that there would have been sufficient evidence in the record to support a finding of legal causation under section 436(2). The evidence indicates that as the boom dropped, the hoist drum bounced along the deck where Massicott was standing. The force of the impact hurled Massicott down fifteen feet of stairs. It is thus apparent that Massicott was within the zone of danger during the accident, and Mintec does not contend otherwise. Hence, the jury reasonably could have found that Mintec, through its sale of a defective product, created an unreasonable risk of physical harm to Massicott.
 
 
 29
 There is no provision comparable to section 436 in the Restatement that is applicable to strict liability. As a general matter, a defendant's conduct is the legal cause of a plaintiff's injury if it is a "substantial factor in bringing about the harm, and there [is] no principle or rule of law which restricts the actor's liability because of the manner in which [his conduct] operates to bring about" the injury. Restatement (Second) of Torts Sec. 9, comment b (1965). In awarding damages to Massicott, the jury necessarily found that Mintec's conduct was a substantial factor in bringing about Massicott's injuries. Thus, Mintec is liable to Massicott for the injuries he sustained unless some rule of law exists which would preclude its liability. The Restatement does not specifically address this issue, nor do its text and commentaries define causation in the strict liability context. Yet section 402A clearly contemplates some causal limitation on a party's ability to recover for physical harm. In determining the parameters of this proximate cause requirement, we are guided by the policy objectives of section 402A.
 
 
 30
 Comment c of section 402A expresses the policy justification for strict liability in tort. The basic rationale is premised upon a theory of cost spreading:
 
 
 31
 [P]ublic policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained....
 
 
 32
 Restatement (Second) of Torts Sec. 402A, comment c (1965). The drafters of the Restatement believed that the product user should have "the maximum of protection at the hands ... of those who market the products." Id. There is no apparent reason why the policy objectives of section 402A should apply with less force when the physical harm results from emotional disturbance than when the harm results from some sort of tortious impact.
 
 
 33
 Although it may be argued that liability should be more limited when it is imposed without regard to fault, there is little indication that such a concern would act as a limitation on the underlying policies of section 402A. The thrust of these policies is to expand rather than restrict liability, by placing the burden of the consequences of accidental injuries caused by products upon the party who is best able to bear it.[4] Accordingly, we believe that the proximate cause limitations under section 402A would be no more restrictive than similar limitations in the negligence context. We therefore conclude that a plaintiff can recover for physical harm resulting from emotional disturbance under section 402A if the requirements for legal causation under section 436 are satisfied.
 
 D. Evidence of Lost Earning Capacity
 
 34
 Mintec further contests the sufficiency of the evidence relating to Massicott's diminished earning capacity. It argues that Massicott's claims are unbelievable in light of the undisputed fact that he continued to work for HOVIC with no reduction in salary for several years following the accident. Mintec contends that Massicott was terminated by HOVIC solely as a result of a general reduction in the work force.
 
 
 35
 Although the evidence is far from overwhelming, we must conclude that there is sufficient support in the record to permit a jury finding of diminished earning capacity. One of Massicott's former supervisors testified that Massicott had been a strong and energetic worker. Another supervisor testified that following the accident Massicott was unable to perform his usual job tasks and was relegated to the position of an errand boy. A vocational rehabilitation expert, testifying by means of a videotaped deposition, stated that because of Massicott's unstable emotional condition, he was at best marginally employable in a very non-stressful, non-pressured, easy kind of job. The expert concluded that Massicott had an approximate annual earning capacity of $6,000. Finally, utilizing the testimony of the vocational expert, an economist calculated the lifetime value of Massicott's lost earning capacity. Reduced to present value, this figure was $644,489. The jury awarded Massicott $350,000 in lost future earnings. Given the foregoing evidence, we cannot say that this award was without sufficient support in the record.
 
 
 36
 In summary, we have concluded that there is sufficient evidence in the record to support a jury finding that Massicott suffered physical harm and that the harm he sustained was legally caused by Mintec. See Restatement (Second) of Torts Sec. 436A, comment c and Sec. 436(2) (1965). We have further determined that the evidence is sufficient to support Massicott's claims of diminished earning capacity. We observe that while Mintec sought a total reversal of Massicott's award, it did not attack the amount of the jury verdict. Accordingly, we will uphold the verdict in favor of Martin Massicott for the full amount awarded.
 
 E. Wrongful Death Awards
 
 37
 We next consider Mintec's contention that the jury awards to Walters' survivors under the Virgin Islands wrongful death statute, 5 V.I.C. Sec. 76, were contrary to the evidence and excessive. The jury awarded $250,000 to each of Walters' minor children and $10,000 to the estate of Walters' mother.
 
 
 38
 Mintec moved for a new trial before the district court, contending essentially that there was insufficient evidence in the record to support the amount of the jury verdicts. In denying Mintec's motion for a new trial, the district court necessarily ruled that the awards were not contrary to the evidence. Therefore, Mintec contends, the district court a fortiori ruled that the awards were not excessive.[5]
 
 
 39
 Our scope of review on appeal is exceedingly narrow. We may reverse the district court and grant either a new trial or a remittitur "only if the verdict is 'so grossly excessive as to shock the judicial conscience.' " Edynak v. Atlantic Shipping, Inc. CIE. Chambon, 562 F.2d 215, 226 (3d Cir.1977), cert. denied 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978) (quoting Russell v. Monongahela Railway Co., 262 F.2d 349, 352 (3d Cir.1958)). It is not enough that an award is "extremely generous," Walther v. Pueblo Supermarket of St. Thomas, Inc., 433 F.2d 935, 936 (3d Cir.1970), or that "we would have found the damages to be considerably less" had that task been ours. Murray v. Fairbanks Morse, 610 F.2d 149, 153 (3d Cir.1979). Rather, we must uphold an award so long as it is rationally based. David v. Pueblo Supermarket of St. Thomas, Inc., 740 F.2d 230 (3d Cir.1984). With these guideliness in mind, we turn our attention to the record in this case.
 
 1. Walters' Children
 
 40
 The jury necessarily found that Royston Roy Elmington and Vivien Yvonne Ricketts were the children of the deceased, St. Claire Walters. The record indicates that the children lived with their mother in England and had not seen their father since his departure from that country in approximately 1971. The childrens' mother, Helen Ebanks, testified that Walters provided financial support for the children in the amount of $100 per month. In addition, Walters would occasionally send them clothing. The monthly payments and sporadic gifts of clothing represented the sole support and services provided by Walters.
 
 
 41
 The jury was instructed that the children could recover for loss of support and services during the period of their minority.[6] App. at 961. At the time of Walters' death, Vivien and Royston were ten and twelve years old respectively. Thus, the younger child was eight years from attaining her majority. The pecuniary detriment suffered collectively by the children was, at most, approximately $9600 ($100 per month for eight years), plus some additional amount representing the valu eof the clothing or other gifts which would have been provided by the decedent.
 
 
 42
 Since the pecuniary losses suffered by the children were relatively slight, the jury verdict was almost entirely an award for lost parental companionship and guidance and for mental pain and suffering.[7] Mintec maintains that the district court should have instructed the jury that damages for non-pecuniary losses are limited to the period of a child's minority. It did not do so.[8] We need not decide whether the Virgin Islands wrongful death statute mandates such a limitation. Even assuming that a surviving minor child may be compensated for losses suffered in adulthood, Royston Elmington and Vivien Ricketts have not presented any evidence to indicate that they are at all likely to suffer such losses in the future.
 
 
 43
 The record indicates that Walters wrote periodic letters to his children. However, the content of such letters was not disclosed and hence, the record is barren of any evidence that Walters provided parental instruction or guidance. Plaintiffs make much of the fact that Royston would no longer be able to participate in outings with his father. Yet it is undisputed that the children had not seen their father for many years prior to his death. Thus, Royston and his sister were denied the pleasure of parental companionship more by the fact of their geographic separation than than by their father's death.
 
 
 44
 Similarly, there is little evidence to establish the children's mental pain and suffering. Their mother testified that Royston had difficulty concentrating on his schoolwork following the death of his father. A psychiatrist testified that Royston would cry at the mention of his father. The only evidence relating to Vivien's mental state was a rather conclusory statement by the psychiatrist that the children "hurt a lot, and ... are reacting to the loss of their father." App. at 379. Vivien herself testified that she had no memory of her father.
 
 
 45
 Admittedly, "[e]vidence of pain and suffering is particularly ill-suited to review upon only a written record." Edynak, supra, 562 F.2d at 227 n. 16. Nevertheless, we must conclude that there is no rational basis in the present record for the amount of the jury verdicts. The only evidence presented at trial indicated that the children would collectively sustain approximately $10,000 in lost support and services. The remainder of the awards, $245,000 for each child, must therefore be attributable to lost companionship and guidance and mental pain and suffering. Given the unique circumstances of their family situation, the magnitude of these awards is indeed shocking to our judicial conscience. See id. at 226. Our review of record indicates that the children could not possibly recover for lost companionship and guidance since there was virtually no evidence that the decedent had provided such support during his lifetime. Furthermore, the evidence of present pain and suffering was, at best, minimal, and we presume that any element of damages based upon such losses would tend to dissipate over time. Hence, we must conclude that it was not reasonably certain that the children would suffer any future pain and suffering and that any award for such damages was purely speculative.
 
 
 46
 We therefore believe that it was not consistent with the sound exercise of discretion for the district court to deny Mintec's motion for a new trial based essentially on the excessiveness of the damages. Additionally, we feel compelled by the facts of this case to note that a district court should be alert to its responsibility to see that jury awards do not extend beyond all reasonable bounds.
 
 
 47
 Mintec has suggested that an appropriate award for each of the children would be in the amount of $25,000. In making this suggestion, we assume that Mintec did not intend that this amount would be further reduced by the 10 percent figure that was originally attributed to the liability of Shepard Niles. We agree that under the circumstances such an award would fairly compensate the children for the wrongful death of their father. Accordingly, we will direct the district court to order a new trial as to the children's claims unless the children elect to file a remittitur of each of their damages in excess of $25,000.
 
 
 48
 In the event that the children elect not to file a remittitur, we must determine the scope of the new trial that will be ordered. A limited or partial new trial may be granted when it "clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." Gasoline Products Co. v. Champlin Refining Co., 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931). We believe that this is an appropriate case for a partial new trial. The excessiveness of the jury verdict as to the children's claims did not in any manner implicate the jury's liability finding. See Wagner v. Reading Co., 428 F.2d 289 (3d Cir.1970) (ordering partial retrial on damages in personal injury action brought pursuant to F.E.L.A.). For this reason, we conclude that the new trial, should one be required, may be limited to the issue of the extent of damages sustained by Walters' children.
 
 2. Ethel Walters
 
 49
 Finally, Mintec asserts that the award to the estate of Ethel Walters, the decedent's mother, is irrational and contrary to law. It argues that because Ethel Walters died prior to the entry of judgment she was not a "survivor" within the meaning of the wrongful death statute. We find this argument to be without merit. The statute explicitly defines "survivors" to include the parents of the deceased. More importantly, V.I.Code Ann. tit. 5, Sec. 76(h) provides that
 
 
 50
 [a] survivor's death before final judgment shall limit the survivor's recovery to lost support and services to the date of his death. The personal representative [of the decedent] shall pay the amount to the personal representative of the deceased survivor.
 
 
 51
 Mintec does not contend that Ethel Walters did not survive her son, nor does it allege that she was not financially dependent upon her son prior to his death. Finally, Mintec does not suggest that the award was otherwise excessive. Because we are satisfied that Ethel Walters was a "survivor" under the Virgin Islands wrongful death statute, we will uphold the award.III.
 
 
 52
 The judgment of the district court in favor of Royston Roy Elmington and Vivien Yvonne Ricketts will be vacated, and the case will be remanded for further proceedings consistent with this opinion. The judgment of the district court will be affirmed in all other respects. One-tenth of the costs of this appeal shall be taxed against each of Walters' children; the remainder shall be taxed against Mintec.
 
 
 
 [1]
 Plaintiffs settled with Shepard Niles prior to trial. A third defendant, Litwin Panamerican, was also named in the suit. All claims against it were dismissed by stipulation of the parties before trial
 
 
 [2]
 The Virgin Islands legislature has adopted the American Law Institute's Restatements of the Law as the rules of decision in the courts of the Virgin Islands, absent local laws to the contrary. See V.I.Code Ann. tit. 1, Sec. 4 (1967)
 
 
 [3]
 For future convenience, we will refer in our opinion to the gross damage figures as determined by the jury
 
 
 [4]
 We note that other jurisdictions which have considered this issue have held that a plaintiff may recover for physical harm resulting from emotional disturbance in strict liability cases. See Gnirk v. Ford Motor Co., 572 F.Supp. 1201 (D.S.D.1983) (construing South Dakota law); Walker v. Clark Equipment Co., 320 N.W.2d 561 (Iowa 1982); Shepard v. Superior Court, 76 Cal.App.3d 16, 142 Cal.Rptr. 612 (1977). Mintec cites two Illinois decisions which have barred recovery for emotional distress under Sec. 402A. See Rickey v. Chicago Transit Authority, 101 Ill.App.3d 439, 57 Ill.Dec. 46, 428 N.E.2d 596 (1981), aff'd. 98 Ill.2d 546, 75 Ill.Dec. 211, 457 N.E.2d 1 (1983); Woodill v. Parke Davis & Co., 58 Ill.App.3d 349, 15 Ill.Dec. 900, 374 N.E.2d 683 (1978), aff'd, 79 Ill.2d 26, 37 Ill.Dec. 304, 402 N.E.2d 194 (1980). However, it is not clear from these decisions whether the Illinois appellate court ruling applies to cases involving physical harm resulting from emotional disturbance. It may be that the court merely determined that emotional distress absent any physical injury is not recoverable under Sec. 402A
 
 
 [5]
 We note that plaintiffs do not contend that Mintec failed to preserve the issue of the excessiveness of the damages in the district court. Consequently, we will consider that the issue was before the district court and is therefore properly before us on appeal
 
 
 [6]
 V.I.Code Ann. tit. 5, Sec. 76(e)(1) (1984 Supp.) provides:
 Each survivor may recover the value of ... future loss of support and services from the date of death and reduced to present value. In evaluating loss of support and services, the survivor's relationship to the decedent, the amount of the decedent's probable net income available for distribution to the particular survivor, and the replacement value of the decedent's services to the survivor may be considered. In computing the duration of future losses, the joint life expectancies of the survivors and the decedent and the period of minority in the case of healthy minor children may be considered.
 (emphasis supplied). Although our reading of the statute suggests that a minor child would not necessarily be precluded from recovering for losses beyond the period of his or her minority, Walters' children have not challenged the district court's instruction. For the purposes of this appeal, we must assume that the jury's calculations for lost future support were limited to the period of the children's minority.
 
 
 [7]
 The Virgin Islands wrongful death statute permits recovery for "lost parental companionship, instruction and guidance and for mental pain and suffering from the date of injury." V.I.Code Ann. tit. 5, Sec. 76(e)(3) (1984 Supp.)
 
 
 [8]
 The jury was instructed that
 [w]ith respect to pain and suffering, and protection, loss of parental guidance ... you may consider ... a sum that would reasonably compensate that person for any pain and suffering already suffered, proximately caused by the injury in question, or that they may continue to suffer in the future, which is reasonably certain.
 App. at 964.