Latoya **ROBINSON**, et al., Plaintiffs,

v.

**ORTHO–McNEIL PHARMACEUTICAL, INC.**, et al., Defendants.

**Civil No. 07–869–GPM.**

United States District Court,
S.D. Illinois.

Jan. 9, 2008.

John J. Driscoll, Seth S. Webb, Brown & Crouppen, St. Louis, MO, for Plaintiffs.

Richard P. Cassetta, Bryan Cave, St. Louis, MO, for Defendants.

### MEMORANDUM AND ORDER

MURPHY, District Judge.

This matter is before the Court on a motion for remand to state court for lack of subject matter jurisdiction (Doc. 9). This action, which was filed originally in the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois, on November 1, 2007, alleges that Plaintiffs Latoya Robinson, Angela Gourley, Keisha Lewis, Kim Musskopf, Felicia Reed, and Felicia Williams suffered personal injuries

as a result of using Ortho Evra, a transdermal contraceptive device. They assert claims for strict liability, breach of implied and express warranties, violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1–505/12, fraud, and negligence against the makers of Ortho Evra, Defendants Ortho–McNeil Pharmaceutical, Inc., ("Ortho–McNeil") Johnson & Johnson, ("J & J") and Johnson & Johnson Pharmaceutical Research and Development, LLC ("J & J Pharmaceutical"). They also assert claims for strict liability, breach of implied warranties, negligence, and statutory consumer fraud against certain pharmacies from which they purchased Ortho Evra, specifically, Defendants American Drug Stores, Inc., ("Osco Drug") Walgreen Company ("Walgreens"), B & D Pharmacy, Inc., ("B & D") and Rite Aid Corporation ("Rite Aid"). Plaintiffs Anthony Robinson, Keith Musskopf, and Ayinde Williams, who are married to, respectively, Latoya Robinson, Kim Musskopf, and Felicia Williams, assert derivative claims for loss of consortium.

■ On December 17, 2007, Ortho–McNeil, J & J, and J & J Pharmaceutical removed the case from state court to this Court, asserting federal subject matter jurisdiction on the basis of diversity of citizenship, which requires, of course, that the parties to a case be of completely diverse state citizenship, that is, no plaintiff may be a citizen of the same state as any defendant, and that the amount in controversy exceed $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a)(1); *Cassens v. Cassens,* 430 F.Supp.2d 830, 832–33 (S.D.Ill.2006). Although it appears from the record that the jurisdictional amount is satisfied in this case, *see Yount v. Shashek,* 472 F.Supp.2d 1055, 1066 (S.D.Ill.2006); *Fields v. Jay Henges Enters., Inc.,* Civil No. 06–323–GPM, 2006 WL 1875457, at *3–5 (S.D.Ill. June 30, 2006), diversity of citizenship is not complete. Latoya and Anthony Robinson are citizens of Wisconsin, Angela Gourley is a citizen of Kansas, and Felicia and Ayinde Williams are citizens of New York. Ortho–McNeil is a corporation incorporated under Delaware law with its principal place of business in New Jersey, and therefore is a citizen of Delaware and New Jersey for diversity purposes, while J & J, as a corporation incorporated under New Jersey law with its principal place of business in New Jersey, is a New Jersey citizen. *See* 28 U.S.C. § 1332(c)(1); *Lyerla v. Amco Ins. Co.,* 461 F.Supp.2d 834, 836 (S.D.Ill.2006). J & J Pharmaceutical is a limited liability company the sole member of which is Ortho–McNeil and therefore is a citizen of Delaware and New Jersey. *See McNichols v. Johnson & Johnson,* 461 F.Supp.2d 736, 738 n. 1 (S.D.Ill.2006). Keisha Lewis, Kim and Keith Musskopf, and Felicia Reed are citizens of Illinois, as are Osco Drug, Walgreens, B & D, and Rite Aid.

■ The removing Defendants contend that diversity of citizenship is complete in this case because the non-diverse Defendants have been fraudulently joined to defeat diversity jurisdiction, that is, there is no possibility that Plaintiffs can establish claims for relief against the non-diverse Defendants under applicable state law. *See Phillips v. Howmedica Osteonics Corp.,* Civil No. 07–833–GPM, 2007 WL 4441228, at *2 (S.D.Ill. Dec. 17, 2007); *Mills v. Martin & Bayley, Inc.,* Civil No. 05–888–GPM, 2007 WL 2789431, at *2 (S.D.Ill. Sept. 21, 2007); *Bavone v. Eli Lilly & Co.,* Civil No. 06–153–GPM, 2006 WL 1096280, at *2 (S.D.Ill. Apr. 25, 2006). Additionally, the removing Defendants request that the Court stay these proceedings so that a determination as to the existence of federal subject matter jurisdiction in this case can be made by the United States District Court for the

Northern District of Ohio, where the Judicial Panel on Multidistrict Litigation has established a multidistrict litigation ("MDL") proceeding for the purpose of conducting coordinated or consolidated pretrial proceedings in cases involving injuries allegedly caused by Ortho Evra. With respect to the removing Defendants' request for a stay, it generally is not the Court's practice to allow cases in which the existence of subject matter jurisdiction is seriously at issue to remain pending long in federal court. The legal questions presented by the instant motion for remand are hardly novel ones for the Court, and they are quite as susceptible of resolution here as they are in the MDL court. *See Weese v. Union Carbide Corp.*, Civil No. 07–581–GPM, 2007 WL 2908014, at *1 (S.D.Ill. Oct.3, 2007) (quoting *Conroy v. Fresh Del Monte Produce, Inc.*, 325 F.Supp.2d 1049, 1054 (N.D.Cal.2004)) (holding that it would be "judicially inefficient" to stay proceedings so that a motion for remand could be resolved by a transferee court, given that "[t]his Court is as qualified to evaluate the factors establishing federal jurisdiction as any other federal court.").

Turning then to the merits of Plaintiffs' motion for remand, the primary argument for fraudulent joinder proffered by the removing Defendants is that Plaintiffs' claims against the diversity-defeating Defendants are precluded under Illinois law by the so-called "learned intermediary" doctrine.[1] As adopted in Illinois in *Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill.2d 507, 111 Ill.Dec. 944, 513 N.E.2d 387 (1987), the doctrine provides generally that, "where prescription drugs

are concerned, the manufacturer's duty to warn is limited to an obligation to advise the prescribing physician of any potential dangers that may result from the drug's use. This special standard for prescription drugs is an ... exception to the ... general rule that one who markets goods must warn foreseeable ultimate users of dangers inherent in his products." *Id.* at 392 (quoting *Stone v. Smith, Kline & French Labs.*, 731 F.2d 1575, 1579 (11th Cir.1984)). "Prescription drugs are likely to be complex medicines, esoteric in formula and varied in effect. As a medical expert, the prescribing physician can take into account the propensities of the drug as well as the susceptibilities of his patient. His is the task of weighing the benefits of any medication against its potential dangers. The choice he makes is an informed one, and individualized medical judgment bottomed on a knowledge of both patient and palliative." *Id.* "Pharmaceutical companies then, who must warn ultimate purchasers of dangers inherent in patent drugs sold over the counter, in selling prescription drugs are required to warn only the prescribing physician, who acts as a 'learned intermediary' between manufacturer and consumer." *Id.* In sum, "[t]he doctor, functioning as a learned intermediary between the prescription drug manufacturer and the patient, decides which available drug best fits the patient's needs and chooses which facts from the various warnings should be conveyed to the patient, and the extent of disclosure is a matter of medical judgment.... [T]here is no duty on the part of manufacturers of prescription drugs to directly warn patients." *Id.* at 393. As the Court has held previously,

---

1. The parties appear to assume that Illinois law furnishes the governing substantive law in this matter. Absent evidence of a need to make a choice of law, the Court is entitled to assume that the forum furnishes the rule of decision in this case. *See Clevenger v. Eastman Chem. Co.*, No. 07–CV–148–DRH, 2007

WL 2458474, at *4 n. 2 (S.D.Ill. Aug. 24, 2007) (citing *Potter v. Janus Inv. Fund*, 483 F.Supp.2d 692, 701 n. 4 (S.D.Ill.2007)) (a federal court presumptively applies the substantive law of the forum, unless the parties to an action dispute the application of such law).

"[u]nder Illinois law, the learned intermediary doctrine is fundamentally a device for shifting liability for harm caused by a product, such as a prescription drug, onto doctors and away from others in the product's chain of distribution." *Brooks v. Merck & Co.*, 443 F.Supp.2d 994, 999 (S.D.Ill.2006). Correspondingly, any assertion by the removing Defendants that Plaintiffs' claims against the non-diverse Defendants are barred by the learned intermediary doctrine "is merely a claim that [Plaintiffs'] case '[is] ill founded as to all ... [D]efendants.'" *Id.* at 1001 (quoting *Chesapeake & Ohio Ry. Co. v. Cockrell,* 232 U.S. 146, 153, 34 S.Ct. 278, 58 L.Ed. 544 (1914)) (emphasis omitted). *See also Bova v. U.S. Bank, N.A.*, 446 F.Supp.2d 926, 932–41 (S.D.Ill.2006) (refusing to find fraudulent joinder on the basis of defenses equally dispositive of the liability of both a diverse defendant and a non-diverse defendant); *Klohr v. Martin & Bayley, Inc.*, Civil No. 05–456–GPM, 2006 WL 1207141, at *3 (S.D.Ill. May 4, 2006) (noting that "the Court could not find fraudulent joinder on the basis of a defense equally applicable as between [a diverse defendant] and [a non-diverse defendant].").

Turning then to the removing Defendants' contention that the claims in this case have been fraudulently misjoined, they rely, of course, upon the curious jurisdictional doctrine announced by *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir.1996), in which the court held that an "egregious" misjoinder of claims may be tantamount to fraudulent joinder. *Rutherford v. Merck & Co.*, 428 F.Supp.2d 842, 850–51 (S.D.Ill.2006) (citing *Tapscott,* 77 F.3d at 1355, 1360). As the Court noted in *Rutherford,* the jurisprudence of the Supreme Court of the United States has never even hinted at the recognition of misjoinder of legally viable, non-fraudulent claims under state law as a species of fraudulent joinder; in fact, the longstanding principle in the federal courts has been that questions of joinder, particularly under state rules of civil procedure, do not implicate federal subject matter jurisdiction. *See id.* at 851. Moreover, because the exercise of federal jurisdiction on removal is entirely a creature of statute and impinges on the proper balance of power between federal courts and state courts, such jurisdiction must be strictly and narrowly construed. It is the province of Congress to enlarge the scope of federal jurisdiction on removal through legislation within the limits of Article III, not the federal courts through innovations like the fraudulent misjoinder doctrine. *See id.* at 851–52. Finally, as the Court noted in *Rutherford,* a survey of case law from courts that have adopted the fraudulent misjoinder doctrine aptly discloses that the contours of the doctrine are anything but clear. *See id.* at 852–54. The United States Court of Appeals for the Seventh Circuit has expressed a strong preference, of course, for jurisdictional rules that are simple and easy to apply, to ensure consistency of results and to avoid waste of resources through erroneous rulings on threshold issues of jurisdiction. *See id.* at 852. As the Court opined in *Rutherford,* any jurisdictional principle based upon highly discretionary, fact-specific determinations about proper joinder of parties and claims in a given case is unlikely to yield a clear, easy-to-apply rule of application. *See id.* at 855. In sum, as in *Rutherford,* the Court declines to recognize the fraudulent misjoinder doctrine absent further guidance on this matter from either the Supreme Court or the Seventh Circuit Court of Appeals.[2]

2. The Court notes in passing that it regards as very questionable whether the claims in this case are misjoined at all. Illinois procedural rules, like those of this Court, favor liberal joinder of parties and claims. *See, e.g., Baumgardt v. Isaacs,* 29 Ill.2d 29, 193 N.E.2d

Finally, the Court addresses the removing Defendants' remaining arguments for fraudulent joinder, namely, that a sale of prescription medication does not constitute a sale of "goods" for purposes of a claim for breach of warranty under the Illinois Uniform Commercial Code ("Illinois UCC") and that Plaintiffs have failed to plead with adequate particularity their claims of statutory consumer fraud against the diversity-defeating Defendants. The Court has held in prior decisions that there is in fact substantial case law from the higher state courts of Illinois indicating that prescription medication is a good within the meaning of the Illinois UCC. *See Smith v. Merck & Co.*, 472 F.Supp.2d 1096, 1100–01 & n. 2 (S.D.Ill.2007) (citing *Berry v. G.D. Searle & Co.*, 56 Ill.2d 548, 309 N.E.2d 550, 553 (1974), and *Woodill v. Parke Davis & Co.*, 58 Ill.App.3d 349, 15 Ill.Dec. 900, 374 N.E.2d 683, 688–89 (1978)). The Court also has recognized that, to the extent there is any ambiguity about whether prescription medication is a good for purposes of the Illinois UCC, that ambiguity must be resolved in favor of remand. *See id.* at 1101, 15 Ill.Dec. 900, 374 N.E.2d 683 (quoting *Rutherford,* 428 F.Supp.2d at 850 n. 1) ("In evaluating fraudulent joinder claims, [a court] must ... resolve all ... ambiguities in the controlling state law in favor of the non-removing party."). Finally, regarding supposed defects in Plaintiffs' pleading of their claims of statutory consumer fraud against the diversity-defeating Defendants, it is true that those claims likely could be pleaded with greater specificity. However, "[i]t is not the burden of [plaintiffs] to show that their case does not belong in federal court. Rather, it is the burden of [a removing defendant], as the party claiming fraudulent joinder, to prove its claim ... 'by ... put[ting] forward evidence that would negate a possibility of liability on the part of ... a non-diverse defendant.'" *Asperger v. Shop Vac Corp.*, Civil No. 07–

31, 32–36 (1963) (allowing joinder of thirty-seven machine tool manufacturers as plaintiffs in a single action to determine whether they were liable under the Illinois Retailers' Occupation Tax; all plaintiffs were engaged in the same type of manufacturing activity and it was alleged that the state Department of Revenue had adopted a uniform course of action as to all plaintiffs); *Metro–Goldwyn–Mayer, Inc. v. Antioch Theatre Co.*, 52 Ill. App.3d 122, 9 Ill.Dec. 813, 367 N.E.2d 247, 250, 254 (1977) (allowing nine motion picture distributors to join their claims in a suit to recover losses from theater owners for underreporting gross admission receipts; the relations between the distributors and theater owners all involved similar contracts and procedures, so that the claims presented common questions of law, and all the claims would be proved using similar evidence, the defendants' books and records, so that the claims presented common questions of fact); *Dorsey v. Material Serv. Corp.*, 9 Ill.App.2d 428, 133 N.E.2d 730, 731–32 (1956) (allowing joinder as plaintiffs of fifty-five residents of a village in an action against four operators of stone quarries to enjoin allegedly excessive and unreasonable use of explosives, which was alleged to constitute a nuisance, and to recover damages for alleged injury to the property of the residents); *Baker v. S.A. Healy Co.*, 302 Ill.App. 634, 24 N.E.2d 228, 230–40 (1939) (allowing joinder as plaintiffs of sixty-two persons claiming personal injury and damage to different property as a consequence of explosions and subsidence of soil in the construction of an intercepting sewer by a contractor under contract with a municipal sanitary district, where the plaintiffs, in order to join in one action to recover against the contractor for alleged negligence, were bound to establish that all were damaged by one transaction or series of transactions, so that there were common questions of law or fact involved). However, because the Court declines to recognize the fraudulent misjoinder doctrine, it is not required to decide this issue. As the Court noted in *Rutherford,* one of the pernicious effects of the doctrine is that federal courts, in testing fraudulent misjoinder, are required to involve themselves regularly in the construction of state procedural rules governing joinder, a matter of purely state concern. *See* 428 F.Supp.2d at 854–55 & n. 2.

772–GPM, 2007 WL 4268779, at *4 (S.D.Ill. Nov. 26, 2007) (quoting *Hauck v. Conoco-Phillips Co.,* Civil No. 06–135–GPM, 2006 WL 1596826, at *4 (S.D.Ill. June 6, 2006)). "Further, [the removing defendant's] 'affirmative proof of fraudulent joinder must be clear and convincing.'" *Id.* The Court concludes that the removing Defendants have failed to prove fraudulent joinder to defeat diversity jurisdiction in this case. Accordingly, Plaintiffs' motion for remand (Doc. 9) is **GRANTED** and pursuant to 28 U.S.C. § 1447(c) this action is **REMANDED** to the Circuit Court of the Twentieth Judicial Circuit, St. Clair County, Illinois, for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**