Joseph D. and Deborah
SMITH, Plaintiffs,

v.

LAW OFFICES OF MITCHELL N.
KAY, Defendant.

Civ. A. No. 90–316–JLL.

United States District Court,
D. Delaware.

Feb. 12, 1991.

O. Randolph Bragg of UAW–GM Legal Services Plan, Newark, Del., for plaintiffs.

Elwyn Evans, Jr. and Jeffrey M. Boyer of Evans and Evans, Wilmington, Del., for defendant.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

### BACKGROUND

On June 22, 1990 the plaintiffs, Joseph and Deborah Smith, brought this action against the defendant Law Offices of Mitchell N. Kay for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (Com-

plaint, Docket Item ["D.I."] 1.) In their complaint, the plaintiffs requested a jury trial. (D.I. 1.) The defendants received long-arm service (D.I. 5) but failed to appear, answer, move, or otherwise defend this suit. (D.I. 7.) Therefore, on September 28, 1990 the Deputy Clerk of the Court entered a default against the defendant pursuant to Federal Rule of Civil Procedure 55(a). (D.I. 7.) On October 11, 1990 the Court ordered that a default judgment be entered against the defendant pursuant to Federal Rule of Civil Procedure 55(b)(2), and a jury trial be held on the issue of damages on October 22, 1990. A copy of the order was sent to the defendant. (D.I. 9.)

A jury trial was held on October 22, 1990 at which the defendants failed to appear and the plaintiffs presented evidence relevant to the issue of damages. After hearing the plaintiffs' evidence and receiving the Court's instructions, the jury awarded the plaintiffs $15,000 actual damages pursuant to 15 U.S.C. § 1692k(a)(1) and the maximum $1,000 statutory damages allowed under § 1692k(a)(2)(A). (D.I. 11.) The Court further ordered that pursuant to § 1692k(a)(3) the defendant pay $120 in costs and $1,365.00 in reasonable attorney's fees. (D.I. 12.) On November 1, 1990 the defendant timely moved for a new trial on the issue of damages pursuant to Federal Rules of Civil Procedure 59(a) & (b). (D.I. 14.) A briefing schedule was set by the Court pursuant to Local Rule 3.1 C(2) and complied with by the parties. The Court will therefore address the merits of the defendant's motion for a new trial.

## DISCUSSION

Essentially, the defendant argues that a new trial is warranted because: (1) the Court's jury instructions misstated the law and therefore prejudiced the defendant, and (2) the jury award is excessive and shocks the judicial conscience. The Court will address these points in turn.

## I. WHETHER THE COURT PROPERLY INSTRUCTED THE JURY ON THE ISSUE OF ACTUAL DAMAGES

■ As noted above, the defendant failed to defend this suit and did not appear at trial. Generally, a defendant that fails to object to a jury instruction before the jury retires, cannot later assign as error the giving of that jury instruction. Federal Rule of Civil Procedure 51 states:

> No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict....

The defendant in this action did not object to the jury instructions until after an unfavorable verdict was rendered by the jury. The defendant, therefore, appears to fall within the prohibition of Rule 51.[1] But Rule 51 is not an absolute bar. "Notwithstanding a party's failure to raise its objection before the district court, an erroneous jury instruction may require reversal if the error is plain or fundamental." *Walters v. Mintec/International,* 758 F.2d 73, 76 (3d Cir.1985).[2]

■ The defendant contends that the Court misstated the law in its jury instructions. If this contention is accurate, the

1. *Holloway v. J.B. Systems, Ltd.,* 609 F.2d 1069, 1074 (3d Cir.1979) ("[A]lthough the Holloways discussed this portion of the charge with the trial judge, they did not object to it or request a clarifying instruction. Accordingly, they may not contest the propriety of the charge on appeal. Fed.R.Civ.P. 51.") (footnote omitted).

2. The "fundamental error" or "plain error" doctrine has been recognized, and applied, in other Third Circuit cases. *Beardshall v. Minuteman Press International, Inc.,* 664 F.2d 23, 27 (3d Cir.1981) (district court committed plain error when jury instruction misstated the burden of proof required by Pennsylvania law in fraud cases; this plain error in the jury instruction is

reversible error even though no objection was made at trial as required by Rule 51); *Wilson v. American Chain & Cable, Co.,* 364 F.2d 558, 562 (3d Cir.1966) (on appeal from a negligence case where the trial court misstated the law concerning superseding causes, the court of appeals stated: "These errors in the charge are so fundamental that we must notice them on appeal, despite the plaintiff's failure to object at the time as required by rule 51."); *McNello v. John B. Kelly, Inc.,* 283 F.2d 96, 102 (3d Cir.1960) (despite party's failure to object to jury instructions at trial as required by Rule 51, court's vague instructions were fundamental error mandating reversal).

Court will, most likely, have made a "plain or fundamental" error. Specifically, the defendant contends that under the FDCPA no "actual damages" for mental suffering can be awarded unless a plaintiff establishes each element of a state's tort of intentional infliction of emotional distress.[3] In the present case, Delaware tort law would be the applicable law.[4] Therefore, since Delaware law requires a plaintiff who seeks to recover for the intentional infliction of emotional distress to prove "extreme and outrageous conduct" by the defendant, and present physical injury, the defendant contends that the plaintiffs in this case were required to prove these same elements. The Court did not instruct the jury that these elements had to be proved. The Court instructed the jury as follows:

First, actual damages may be awarded the plaintiff as a result of the failure of defendants to comply with the Act. Actual damages not only include any out of pocket expenses, but also damages for personal humiliation, embarrassment, mental anguish or emotional distress.

You must determine a fair and adequate award of these items through the exercise of your judgment and experience in the affairs of the world after considering all the facts and circumstances presented during the trial of this case.

(Trial transcript, D.I. 18 at 24.) Since the only evidence of actual damages provided by the plaintiffs pertained to mental suffering, the Court will assume that if the defendant's statement of the law is correct, the Court's jury instructions were fundamentally flawed and caused a miscarriage of justice.[5] The Court must therefore resolve this question of law raised by the defendant. For the following reasons, the Court concludes that the defendant's statement of the law is inapplicable in the District of Delaware and that the Court's jury instructions were proper.

A. *Case Law In The Third Circuit Concerning The Proper Standard For Assessing Damages For Emotional Distress Under § 1692k(a)(1).*

There is very little case law in the Third Circuit addressing the issue of whether a plaintiff seeking actual damages for emotional distress under § 1692k(a)(1) must prove the elements of the state law tort of intentional infliction of emotional distress. The Third Circuit has not specifically addressed the issue. Nonetheless, the persuasive authority that is available, suggests that the plaintiffs in the present case do not need to prove the elements of the intentional infliction of emotional distress.

---

**3.** In support of its position, the defendant has cited the following cases: *Carrigan v. Central Adjustment Bureau, Inc.,* 502 F.Supp. 468, 470–71 (N.D.Ga.1980) ("[T]he Court holds that Plaintiff's entitlement to damages [under § 1692k(a)(1) ] should turn on whether or not he would be entitled to collect damages, were this a cause of action for the intentional infliction of mental distress." The Court proceeded to apply Georgia tort law which does not require a showing of "contemporaneous physical harm" in order to recover for the intentional infliction of mental distress.); *Venes v. Professional Service Bureau, Inc.,* 353 N.W.2d 671 (Minn.Ct.App.1984) (The Court, citing *Carrigan* and 15 U.S.C. § 1692k said: "A consumer injured by a debt collector's failure to comply with the provisions of the Fair Debt Collection Practices Act is entitled to recover actual damages ... including damages for the intentional infliction of emotional distress." [citations omitted]. The Court then applied Minnesota tort law in order to determine whether the plaintiff was entitled to actual damages for emotional distress under section 1692k(a)(1). Like

Georgia, Minnesota law does not require proof of contemporaneous physical injury in intentional infliction of emotional distress cases.)

**4.** In Delaware, the tort of intentional infliction of emotional distress arguably requires both "extreme and outrageous" behavior by the defendant and evidence of present physical injury to the plaintiff. *McKnight v. Voshell,* C.A. No. 168–1985, slip op. at 7 (Del. Aug. 6, 1986 [513 A.2d 1319 (table) ] ); *Rea v. Midway,* C.A. No. 88C–JL6, 1990 WL 35285, slip op. at 2 (Del.Super.Ct. March 14, 1990), 1990 Del.Super.Lexis 102; *Rizzo v. E.I. DuPont de Nemours & Co.,* C.A. No. 86C–JL–88, 1989 WL 135651, slip op. at 9 (Del.Super.Ct. October 31, 1989), 1989 Del.Super.Lexis 450; *Rea v. Midway Realty Corp.,* C.A. No. 88C–JL6, 1990 WL 35285, slip op. at 11 (Del.Super.Ct. August 23, 1989), 1989 Del.Super. Lexis 322.

**5.** Even if a jury instruction contains "plain or fundamental" error, a new trial will not be warranted unless the error resulted in a miscarriage of justice. *McNello,* 283 F.2d at 102–03.

In *In re Littles (Littles I)*, 75 B.R. 240 (Bankr.E.D.Pa.1987), *later proceeding, In re Littles (Littles II)*, 90 B.R. 669 (Bankr.E. D.Pa.1988), *modified, Crossley v. Lieberman*, 90 B.R. 682 (E.D.Pa.1988), *aff'd*, 868 F.2d 566 (3d Cir.1989), the bankruptcy court had to consider whether it had jurisdiction to make proposed findings of fact and conclusions of law in an action by the bankrupt estate against a debt collector for violations of the FDCPA. The central issue in this jurisdictional question was whether the estate's claims for emotional distress under § 1692k(a)(1) of the FDCPA were "personal injury torts" that had to be tried in the district court pursuant to 28 U.S.C. § 157(b)(5). The bankruptcy court in *Littles I* concluded that it could make proposed findings of fact and conclusions of law because "[t]he analysis of whether damages for emotional distress have been proven under [the FDCPA] need not rise to the level required to prove the tortious infliction of emotional distress." *Id.* at 242. On appeal to the district court, the bankruptcy court was affirmed on this point and its reasoning adopted verbatim. *Crossley v. Lieberman*, 90 B.R. 682, 692 (E.D.Pa.1988). The Third Circuit at least tacitly affirmed the position of the bankruptcy and district courts when it took jurisdiction of the appeal pursuant to 28 U.S.C. § 157(c)(1) and affirmed the district court. *Crossley v. Lieberman*, 868 F.2d 566, 567 (3d Cir.1989). The Third Circuit did not squarely address the issue with which this Court is now interested.

In *In re Littles (Littles II)*, 90 B.R. 669, 680 (Bankr.E.D.Pa.1988), the court made findings of fact and conclusions of law in accordance with its opinion in *Littles I*. In *Littles II* the bankruptcy court had to address whether either of two estates were entitled to damages from a debt collector for emotional suffering caused by the debt collector's alleged violations of the FDCPA. The court concluded that an award of damages for emotional distress was appropriate. In responding to the debt collector's arguments to the contrary, the bankruptcy court noted:

We also reject the Defendant's contention that damages are properly collectible only if a consumer can produce evidence of actual physical injury or could collect damages only if the consumer could establish a claim based upon the tort of intentional infliction of emotional distress under applicable state law.

\*　　\*　　\*　　\*　　\*　　\*

The very inadequacy of the tort of intentional inflection (sic) of mental distress to create a cause of action to prevent abusive collection practices was undoubtedly the motivation behind the enactment of such measures as the FDCPA....

*Id.* at 680. The district court did not adopt the bankruptcy court's proposed findings of facts and conclusions of law in their entirety. *Crossley*, 90 B.R. at 698. The district court awarded the debtor more actual damages for emotional distress than the bankruptcy court had recommended. *Id.* In doing so, the district court did not explain the legal basis for its award but noted that the debtor had exhibited several physical manifestations of her emotional distress. *Id.* The court of appeals' opinion is similarly unhelpful because the debt collector did not raise the actual damages issue on appeal. *Crossley*, 868 F.2d at 572. The Third Circuit only noted:

[The debt collector] does not specifically address the district court's award of $1,000 in actual damages under section 1692k(a)(1). In the circumstances of this case an attack on the award of actual damages to [the debtor] in the amount of $1,000 would in any event be fruitless.

*Id.* The bankruptcy court's opinions in *Littles I & II* clearly state that a plaintiff does not have to prove the state tort law elements of intentional infliction of emotional distress in order to collect damages for mental suffering under § 1692k(a)(1). The issue, though, was only partially addressed by the district court and not at all by the court of appeals. Nonetheless, the bankruptcy court's opinions are persuasive authority with which this Court agrees. The Court's reasons for agreeing with the bankruptcy court are set out below.

B. *Awards Of Actual Damages For Emotional Distress Under The Analogous Fair Credit Reporting Act.*

The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, establishes guidelines by which credit information can be gathered and disseminated. The FCRA, like the FDCPA, is a consumer protection statute. Both acts are schematically very similar and designed not to overly burden valid credit reporting or debt collection practices. The FCRA creates private rights of actions for both willful and negligent noncompliance with the statute. 15 U.S.C. §§ 1681n & 1681o. The FCRA, through §§ 1681n and 1681o, specifically provides for the recovery of actual damages. Section 1681n of the FCRA states:

> Any consumer reporting agency or user of information which willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—
>
> (1) any actual damages sustained by the consumer as a result of the failure;

The wording of § 1681o of the FCRA is nearly identical. The language of the "Civil liability" provision of the FDCPA is very similar to those in the FCRA; it states:

> (a) except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—
>
> (1) any actual damages sustained by such person as a result of such failure;

Due to the similarities in language, structure, and purpose between the statutes, it is instructive for this Court to consider how actual damages for emotional distress under the FCRA have been dealt with by other courts.

In *Millstone v. O'Hanlon Reports, Inc.*, 528 F.2d 829 (8th Cir.1976), the court of appeals affirmed the district court's award of actual damages for emotional distress under the FCRA. In responding to the defendant's objection to the district court's

award of damages, the court of appeals said:

> But O'Hanlon cites the much maligned rule that there should be no recovery in tort for mere mental pain and anxiety, and directs our attention to *Southern Express Company v. John Byers*, 240 U.S. 612, 36 S.Ct. 410, 60 L.Ed. 825 (1916). Here, however, the rule is inapplicable because, unlike *Southern Express*, Millstone has an independent cause of action under the Fair Credit Reporting Act quite apart from any recovery he might have sought in tort.

*Millstone*, 528 F.2d at 834. The plaintiff in *Millstone* was awarded $2,500 in actual damages because "he suffered by reason of his mental anguish and had symptoms of sleeplessness and nervousness...." *Millstone v. O'Hanlon Reports, Inc.*, 383 F.Supp. 269, 276 (E.D.Mo.1974), *aff'd*, 528 F.2d 829 (1979). After establishing that the defendant had violated the FCRA, the plaintiff was not required to prove each element of Missouri's tort of intentional or negligent infliction of emotional distress, in order to receive compensation for his mental suffering.

In *Thompson v. San Antonio Retail Merchants Ass'n*, 682 F.2d 509, 513–14 (5th Cir.1982), the plaintiff testified that he was humiliated, embarrassed, and upset by the defendant's conduct. There were no out-of-pocket expenses to the plaintiff and no evidence of physical harm. *Id.* Nonetheless, the court upheld the district court's damage award of $10,000 because "humiliation and mental distress do constitute recoverable elements of damage under the [FCRA]." *Id.* at 513–14.

In *Bryant v. TRW, Inc.*, 487 F.Supp. 1234 (E.D.Mich.1980), *aff'd*, 689 F.2d 72 (6th Cir.1982), the court instructed the jury on the issue of actual damages as follows:

> If your verdict is for plaintiff, for negligent non-compliance, then your duty is to determine the amount of money which reasonably compensates him for the damage which you decide resulted from defendant's failure to comply. You should include each of the following elements of damage ...

(a) mental anguish;

(b) embarrassment;

(c) humiliation.

\*   \*   \*   \*   \*   \*

Which, if any, of these elements of damage has been proved by plaintiff is for you to decide, based upon evidence and not upon speculation, guess or conjecture. The amount of money to be awarded for certain of these elements of damage, such as mental anguish, cannot be proved in a precise dollar amount. The law leaves such amount to your sound judgment.

\*   \*   \*   \*   \*   \*

Damages for embarrassment, humiliation and mental anguish will not be presumed to have occurred, plaintiff must prove they have occurred.

*Id.* at 1239–40, n. 7. At trial the plaintiff's proof of damages consisted of his testimony concerning "the embarrassment, anxiety, humiliation and emotional stress he suffered as a consequence of his difficulties over the two reports. No out-of-pocket expenses or actual dollar losses were proven." *Id.* at 1237. The jury awarded the plaintiff $8,000 actual damages. The award was upheld by both the district court and the court of appeals. The court of appeals simply noted:

We have no doubt from this record that plaintiff offered proofs from which the jury could properly have found that defendant's failure in timely fashion to use "reasonable procedures to assure maximum possible accuracy" occasioned damage to plaintiff's name and consequent anguish and humiliation.

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir.1982). The independent state law tort of negligent infliction of emotional distress did not have to be proved.

■ Under the FCRA, a statutory scheme very similar to the FDCPA, a plaintiff who proves a violation of the act is entitled to actual damages for emotional distress arising from the violation, without first having to prove a right of action under state law. This Court similarly holds that, when a violation of the FDCPA has been established, actual damages for emo-

tional distress can be proved independently of state law requirements. Congress did not limit the recovery of actual damages for emotional distress under the FDCPA or FCRA to those damages a plaintiff could have recovered under state law in a separate tort action for intentional or negligent infliction of emotional distress.

### C. *Congressional Intent.*

The defendant contends that under § 1692k(a)(1), damages for emotional distress are only compensable if the plaintiff proves each element of the state law tort of intentional or negligent infliction of emotional distress. This position is contrary to the stated intentions of Congress.

#### 1. Congressional Intent To Supplement Inadequate State Law Remedies.

The language of the FDCPA and Congressional Record indicate that Congress was seriously concerned with the deleterious effects of widespread oppressive debt collection practices. Congress stated in the "findings and declaration of purpose" section of the FDCPA, that:

There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

15 U.S.C. § 1692(a). From the above findings, Congress concluded that "[e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers." 15 U.S.C. § 1692(b). The inadequacies were to be found in both state and federal laws. "The committee believes that the serious and widespread abuses in this area and the inadequacy of existing State and Federal laws make this legislation necessary and appropriate." 1977 U.S. Code Cong. & Admin.News 1695, 1697. In summarizing the statute, the committee flatly added: "[E]xisting State laws are inadequate to curb these abuses." *Id.* at 1701. It is therefore unlikely that Congress intended to limit a plaintiff's award of actual damages to those damages which he could have collected under existing state

law.[6] But that is exactly what the defendant is arguing. The defendant contends that a recovery for emotional distress hinges on whether a cause of action for those same damages would be successful under the "existing State laws" that Congress found so inadequate. It is this anomalous result that the Court rejects.

2. Congress Intended to Create a Uniform Law Governing Debt Collection.

The FDCPA states that "[i]t is the purpose of this subchapter ... to *promote consistent State action* to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e) (emphasis added.) Sections 1692n and 1692o enforce this desired uniformity on the states. Given Congress' intent to establish uniform guidelines for enforcing permissible debt collection practices, it would be counter intuitive to read the FDCPA so that plaintiffs have different rights of recovery in each state.

The elements that must be proved in order to establish a cause of action for the intentional infliction of emotional distress, vary from state to state. Delaware appears to require extreme and outrageous behavior by the defendant, and physical harm to the plaintiff. *See supra* note 4. Georgia does not require evidence of physical harm. *See supra* note 3. On the other hand, Minnesota, while not requiring physical harm to the plaintiff, does require that the emotional distress be severe. *Id.* The defendant argues that actual damages for emotional distress must be proved by reference to the state's tort of negligent or intentional infliction of emotional distress. If the defendant were to prevail in its argu-

ment, a plaintiff's recovery of actual damages for emotional distress would vary from state to state because the plaintiff would be compelled to prove something different under the law of each state. The defendant's legal argument, if successful, would undermine the uniformity intended by Congress.

3. Congress Was Aware Of Judicial Interpretations Of The Fair Credit Reporting Act When It Enacted The Fair Debt Collection Practices Act.

In section "B" of this Opinion, the Court discussed how several jurisdictions permit plaintiffs to recover for emotional distress under the FCRA without proving the state law elements of negligent or intentional infliction of emotional distress. Since the FCRA was enacted seven years before the FDCPA, the Court concludes that Congress must have been aware of those decisions that predate the FDCPA. Despite its awareness of these decisions, Congress still enacted the FDCPA using nearly identical enforcement language. The Court recognizes this as some evidence that Congress intended actual damages under the FDCPA to be awarded in the same manner as under the FCRA, that is, without reference to state tort law.

II. WHETHER A NEW TRIAL IS WARRANTED BECAUSE THE JURY AWARD WAS EXCESSIVE AND SHOCKING TO THE JUDICIAL CONSCIENCE

█ The Court may grant a new trial whenever a jury award is so excessive it

---

**6.** Existing state laws would, in many cases, afford no relief at all to the victim of abusive debt collection practices. This is particularly true where state law requires proof of physical injury before a plaintiff can recover for the intentional infliction of emotional distress. In *Greene v. Rash, Curtis & Associates,* 89 F.R.D. 314 (E.D.Tenn.1980), the district court first discussed the type of abusive debt collection practices that the FDCPA is intended to prevent. Since the applicable state law required physical harm to be proved in actions for the intentional infliction of emotional distress, as does Delaware's, the court concluded:

The foregoing type of conduct [violations of the FDCPA] would seldom tend to cause any physical injury or well-defined physical conse-

124 B.R.—6

quences; instead, the recipient of these types of abusive practices, at the very most, might be expected to be humiliated, annoyed, and perhaps made nervous and fearful. If these forms of mental anguish were not compensable under the act, then, in most situations, the aggrieved plaintiff would not be able to recover any actual damages under 15 U.S.C. § 1692k(a)(1), except to the extent that he or she might have suffered some related out-of-pocket expenses.

*Id.* at 316. In states such as Delaware, a reading of § 1692k(a)(1), that looks to state tort law, would afford plaintiffs no protection from the very conduct the FDCPA is intended to curb. This would appear to be contrary to Congress' intentions.

"shocks the judicial conscience." *Edynak v. Atlantic Shipping, Inc., Cie. Chambon Maclovia S.A.*, 562 F.2d 215, 226 (3d Cir. 1977), *cert. denied*, 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978); *McDonnell v. S & S Produce Co.*, 690 F.Supp. 305, 308 (D.Del.1988). The determination of whether a jury award "shocks the judicial conscience," and therefore warrants a new trial, is left to the sound discretion of the district court.[7] *Edynak*, 562 F.2d at 225–26; *McDonnell*, 690 F.Supp. at 308; *Schreffler v. Board of Education*, 506 F.Supp. 1300, 1306 (D.Del.1981). The Court can exercise this discretion to grant a new trial by conditioning a new trial on the plaintiff's failure to remit a specified portion of the jury award. *Spence v. Board of Education*, 806 F.2d 1198, 1202 (3d Cir.1986);[8] *Kazan v. Wolinski*, 721 F.2d 911, 914 (3d Cir.1983);[9] *McDonnell*, 690 F.Supp. at 308. *See also Gumbs v. Pueblo International, Inc.*, 823 F.2d 768, 769 & 775 (3d Cir.1987);[10] *Walters v. Mintec/International*, 758 F.2d 73, 82 (3d Cir. 1985).[11] In the present case, the only actual damages sought by the plaintiffs were for emotional distress. (D.I. 18 at 20, Closing Argument of Mr. Bragg.) The Court concludes that, as a matter of law, the jury's award of $15,000 actual damages was grossly excessive, not rationally related to the evidence, and "shocking to the judicial conscience." The Court will therefore grant the defendant's motion for a new trial on the issue of damages, if the plaintiffs fail to remit $12,000 of the excessive award.[12] The Court's reasons for reducing the award for emotional distress, and granting a new trial on the issue of damages, are explained below.

### A. The Jury's Award Of $15,000 In Actual Damages For The Plaintiffs' Emotional Distress Shocks The Court's Conscience.

At trial, the plaintiffs sought to establish that they had suffered actual damages arising from four communications sent by the defendant. The plaintiffs alleged that these communications violated the FDCPA and caused them emotional distress, compensable under § 1692k(a)(1) of the act. The fact-finding process at trial was hampered by the defendant's failure to appear; nonetheless, the following facts were established.

The first correspondences from the defendant Law Offices of Mitchell N. Kay, were identical letters sent to Joseph and Deborah Smith. (Plaintiffs' Exhibit ["PX"] 3 & 5.) These letters were dated September 15, 1989, and sent separately to Joseph and Deborah. (*Id.*; D.I. 18 at 13.) The letters pertained to a $206 debt the defendants owed (Bankruptcy Petition, PX 1; D.I. 18 at 7), and threatened the Smiths with legal action, the garnishment of their

---

**7.** This discretion should not be used to abdicate all responsibility to the jury. The district court is obligated to police jury verdicts. *Walters v. Mintec/International*, 758 F.2d 73, 82 (3d Cir. 1985) ("Additionally, we feel compelled by the facts of this case to note that a district court should be alert to its responsibility to see that jury awards do not extend beyond all reasonable bounds.")

**8.** "In summary, it is our opinion that the district judge properly used his discretion to offer a remittitur or a new trial to the plaintiff." *Spence*, 806 F.2d at 1202.

**9.** "The court then followed a proper procedure in cases such as this, where no clear judicial error or 'pernicious influence' can be identified but where the verdict is so large as to shock the conscience of the court: the court ordered plaintiff to remit the portion of the verdict in excess of the maximum amount supportable by the evidence or, if the remittitur were refused, to submit to a new trial." *Kazan*, 721 F.2d at 914.

**10.** "[W]e will return the case to the district court for a new trial on the amount of damages unless the plaintiff elects to file a remittitur as herein directed." *Gumbs*, 823 F.2d at 769.

**11.** "Accordingly, we will direct the district court to order a new trial as to the children's claims unless the children elect to file a remittitur of each of their damages in excess of $25,000." *Walters*, 758 F.2d at 82.

**12.** A Court must reduce an excessive jury verdict to an amount no less than the maximum that does not shock the Court's conscience. In other words, the Court must allow the plaintiff as large a damage recovery as it can, without shocking the Court's conscience. *Gumbs*, 823 F.2d at 774; *Couch v. St. Croix Marine, Inc.*, 667 F.Supp. 223, 226 (D.V.I.1987).

wages, and sequestration of their property, if the debt was not promptly paid.[13] (PX 3 & 5; D.I. 18 at 7.) Shortly thereafter, Joseph Smith received a phone call from the defendant law offices, threatening to take the same actions described in the letters. (D.I. 18 at 8.) Joseph Smith testified that he received a third letter from the defendant after he had consulted with an attorney. (*Id.* at 11.) No such letter was entered into evidence, but Mr. Smith testified that it was essentially the same as the others. (*Id.*)

The communications from the defendant began in September of 1989. (PX 3 & 5; D.I. 18 at 11.) The plaintiffs testified at trial that their financial and family woes did not begin with these communications. Prior to September of 1989, Joseph Smith was placed on disability leave from Chrysler Corporation, which resulted in a drastic reduction in the family's income. (D.I. 18 at 3–6.) Joseph Smith had injured his hip and needed surgery to replace it. (*Id.* at 3.) His doctor told him he would be disabled for up to a year. (*Id.* at 15.) Deborah Smith, Joseph's wife, was working as a cleaning woman and thus supplemented the family income. (*Id.* at 14.) But she was pregnant and expected her baby sometime in December. (*Id.* at 15.) She knew she couldn't continue with the physically taxing work long enough for her husband to recu-

perate and return to work. (*Id.* at 14–15.) A kidney problem added to Deborah Smith's troubles. (*Id.* at 15.) The plaintiffs also testified that they were having difficulty paying their bills, which included installments on their car, and payments for the trailer in which they lived. (PX 1; D.I. 18 at 6 & 16.) The Smiths were forced to rely on food and money from their church in order to feed their family and pay their car insurance. (D.I. 18 at 16.) Eventually, the plaintiffs felt so overwhelmed, they filed for bankruptcy. (PX 1; D.I. 18 at 6.) They began completing the necessary documents in May of 1989, and filed in July, but did not have their petition approved until late November. (PX 1 & 2.)

By September of 1989, the plaintiffs were in a desperate state. Joseph Smith was bedridden at home (D.I. 18 at 9–10 & 15), Deborah Smith was six and a half months pregnant and still working[14] (*Id.* at 14.), Joseph and Deborah were fighting (*Id.* at 11–12), and, perhaps worst of all, the bankruptcy court had not yet ruled on their chapter seven petition. (PX 2; D.I. 18 at 9 & 13.) The plaintiffs were very worried that the bankruptcy court might not approve their petition. They owed more than $42,000. (PX 1 at "Summary of Debts and Property.") It was during this period that the communications from the Law Offices

---

13. The letter stated:

THIS NOTICE SHALL SERVE AS YOUR FINAL OPPORTUNITY TO BRING YOUR ACCOUNT UO (sic) TO DATE.

WE ARE PREPARING THE NECESSARY LEGAL PAPERS AND, UNLESS FULL PAYMENT IS RECEIVED BY US WITHIN TEN (10) DAYS, WE SHALL CAUSE A SUMMONS TO BE ISSUED AGAINST YOU.

IN THE EVENT WE ARE SUCCESSFUL IN OBTAINING A JUDGMENT AGAINST YOU, YOUR INDEBTEDNESS MAY BE INCREASED BY THE ADDITION OF INTEREST, COURT COSTS, ATTORNEY FEES AND DISBURSEMENTS.

FURTHERMORE, WE MAY ISSUE AN EXECUTION TO A MARSHALL OR SHERIFF, DIRECTING HIM TO GARNISHEE (sic) YOUR EARNINGS, ATTACH YOUR BANK ACCOUNT(S) OR OTHER PROPERTY, OR BOTH.

CONSEQUENTLY, IT APPEARS TO BE IN YOUR INTEREST TO REMIT PAYMENT IN FULL, WITHIN THE STATED TIME, IN ORDER TO AVOID THE COMMENCEMENT OF LEGAL PROCEEDINGS AGAINST YOU.

IF YOU ARE UNABLE TO PAY THE ENTIRE BALANCE AT ONCE, PLEASE CONTACT THIS OFFICE WITHOUT DELAY.

THIS IS AN ATTEMPT TO COLLECT A DEBT. INFORMATION RECEIVED WILL BE USED FOR THAT PURPOSE.

(PX 3 & 5.) (capitalization in original.)

14. Deborah Smith described the home and financial situation, before the communications from the defendant, as follows:

I said, well, you know, I can't stop working. I have to work. The baby was due at Christmas. It was hard. During my pregnancy I was having problems with my kidneys and was on medicine. So with working and him home in a hospital bed then coming home and taking care of him and our eight-year-old and being pregnant and working eight to nine hours a day, it was starting to get to me. (D.I. 18 at 15.)

of Mitchell N. Kay arrived, demanding prompt payment of a $206 debt.

September of 1989 was a difficult time for the plaintiffs, but they were not entirely defenseless. On July 25, 1989 they had filed for Bankruptcy. (PX 1 & 2.) From the moment of their filing, the Bankruptcy Code's automatic stay protected the plaintiffs from the collection efforts of the defendant. 11 U.S.C. § 362. The plaintiffs appear to have understood this. "Exhibit 'B'" of the plaintiffs' bankruptcy petition is a signed statement by Barbara James, Esq. stating that she "explained the relief available under each such chapter" to the plaintiffs. (PX 1 at "Exhibit 'B.'") Though this does not, in and of itself, prove that the plaintiffs knew of the automatic stay, the plaintiffs' actions support this conclusion. When someone from the defendant law offices called to collect the $206 J.C. Penney debt, Joseph Smith had the wherewithal to inform the caller that he and his wife had filed for bankruptcy. (D.I. 18 at 9.)

The evidence also suggests that the threat of a lawsuit should not have devastated the plaintiffs. The bankruptcy petition indicates that in the year prior to the plaintiffs' filing, they had retained no less than three different attorneys. Mr. Bragg appears to be their fourth. (PX 1 at "Statement of Financial Affairs For Debtor Not Engaged In Business," Item 15a.) Also, according to the bankruptcy petition, the plaintiffs were in the midst of two lawsuits at the time of filing. (Id., Item 10a.) The two suits did not include the present case, which was commenced after the bankruptcy petition was filed. The plaintiffs' frequent contact with lawyers, and familiarity with the legal process, lessens the likelihood that an unenforceable threat to collect a debt would cause them extreme emotional distress.

In September of 1989, the plaintiffs were distressed, but this was not entirely due to the communications from the defendant.[15] The jury had to decide how much of the plaintiffs' emotional suffering was proximately caused by the defendant's violations of the FDCPA, and then make an appropriate award. The jury failed to diligently perform this task. In *Gumbs*, the Third Circuit elaborated on the jury's discretion to award damages, and noted:

A jury has very broad discretion in measuring damages; nevertheless, a jury may not abandon analysis for sympathy for a suffering plaintiff and treat an injury as though it were a winning lottery ticket. There must be a rational relationship between the specific injury sustained and the amount awarded.

*Gumbs*, 823 F.2d at 773. As a matter of law the jury abused its discretion.

The Court has considered the testimony and exhibits presented at trial by the plaintiffs. The plaintiffs testified that the communications from the defendant made them upset. But their testimony reveals that their financial woes, the uncertainty of the bankruptcy, Joseph Smith's disability, and Deborah Smith's pregnancy also caused the plaintiffs to be upset. With respect to the

---

**15.** Joseph Smith testified concerning his feelings when he first heard from the defendant:

At this time, I was laid up in a hospital bed at home. I was very upset. I was in a position where I did not know what to do. I was in a state of shock. Actually, I knew I had already filed for bankruptcy. That was an embarrassing enough situation, but after the threats and so forth, that was putting me to a point where I was pulling my hair out at this point. I didn't know what to do.

(D.I. 18 at 9.) At trial, Deborah Smith explained the events leading up to the communications from the defendant, and how those communications made her feel.

Well, at that time, I was dealing with a lot of distress, because as my husband said, he was home in a hospital bed and I was approx-

imately six months pregnant and working, and to have income with what he received, you know, to get by on, and with all our bills and such, my job was considered important.

I had to do physical work. It was starting to wear on me. When I received this [letter], at that time, we did not know if our bankruptcy was going to go through. It upset me because I didn't know how long or where things were going from there with the baby coming. I didn't know how much longer I could work as I got bigger, and it was very upsetting.

(D.I. 18 at 13.) Concerning her specific fears with regard to the defendant's communications, Deborah Smith stated that she feared the defendant would "take something of equal value to recover the [$206] debt." (*Id.* at 16.)

communications from the defendant, the evidence shows that the first letters were dated September 15, 1989. The plaintiffs were already protected by the Bankruptcy Code's automatic stay. By October 5, 1989, the plaintiffs had retained Mr. Bragg, who sent a letter to the defendant on that date. Therefore, on October 5, at the very latest, the plaintiffs knew they were protected by the Bankruptcy Code's automatic stay. At most, the plaintiffs were uncertain of their rights from September 15 to October 5. On November 27, 1989 the Bankruptcy Court discharged the plaintiffs' debts, including the $206 J.C. Penney debt. After considering the evidence, the Court concludes that the jury's award of $15,000 actual damages is shocking to the Court's conscience, and not rationally related to the evidence presented at trial. The largest award the Court can, in good conscience, permit the plaintiffs to recover for their emotional distress, is $3,000.[16]

B. *If The Plaintiffs Fail To Remit The Excessive Portion Of Their Award, A Partial New Trial On The Issue Of Both Actual and Statutory Damages Will Be Necessary.*

■ The Supreme Court has held that a partial new trial can be granted if the issue for retrial is "distinct and separable," and the new trial would not cause injustice. *Gasoline Products Co. v. Champlin Refining Co.,* 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931). *See also Walters,* 758 F.2d at 82. In the present case, a default judgment was entered on the issue of liability and a jury trial held on the issue of damages. The Court, therefore, has already put the issue of damages to a jury without having the jury consider the liability issue. At trial, the issues of liability and damages proved to be separable and distinct, and their separation did not result in

injustice. The Court will therefore allow a new trial on the issue of damages alone.

■ The more difficult question, in this case, is whether "actual damages" under § 1692k(a)(1) and statutory damages under § 1692k(a)(2)(A) are "distinct and separable" issues. The Court concludes that they are not. Statutory damages are discretionary "additional damages," of up to $1,000. The amount a jury awards for these statutory or discretionary damages may depend on how the jury feels about its award of actual damages. For example, the jury may conclude that the actual damages suffered by the plaintiff, and paid by the defendant, do not adequately "punish" the defendant. In such a case, the jury might be inclined to award greater statutory damages. This is not the only problem with separating the issues of actual and statutory damages. When a jury awards statutory damages, the jury should consider "among other relevant factors ... the frequency and persistence of noncompliance by the debt collector," and "the nature of such noncompliance." 15 U.S.C. § 1692k(b)(1). These factors are equally relevant when a jury considers actual damages for emotional distress. This further suggests that the two damages issues are not distinct. The Court concludes that the issues of actual and statutory damages are not "distinct and separable" and must therefore be tried together.

## CONCLUSION

The Court concludes that its jury instructions were proper, but that the evidence presented at trial cannot support an actual damage award of $15,000 for emotional distress. The jury's award is excessive and shocks the Court's conscience. The Court will therefore grant the defendant's motion for a new trial on the issue of damages, both actual and statutory, unless the plain-

---

16. In *Gumbs,* the Third Circuit noted that the proper amount of a remittitur is difficult to determine. "The determination of that amount may not be precisely calculated." *Gumbs,* 823 F.2d at 774. The Court has considered other awards for emotional distress and in particular, the jury award in *Joseph D. Smith v. American Credit Systems, Inc.,* C.A. No. 90–172–MMS

(D.Del.1990.) In that case, as in the present case, Joseph Smith was the plaintiff and the defendant failed to appear at trial. But in *American Credit Systems,* the jury awarded Joseph Smith only $2,000 for the emotional distress caused him by the defendant's violations of the FDCPA.

tiffs agree to remit $12,000 of their award for actual damages.